

U.S. FILED
EASTERN DISTRICT COURT
DISTRICT OF LA
2001 JAN 22 PM 2: 08
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RESHONE M STEWART

versus

WILLIAM J HENDERSON,
      POSTMASTER GENERAL

CIVIL ACTION

JUDGE CLEMENT
MAG. WILKINSON
NO. 00-0114 N/2

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## II.    STATEMENT OF THE CASE

Defendant's EEO training did not include instruction in the reporting process

or, most significantly, a statement of the 45-day reporting limit. Defendant makes

no representation whatsoever that the training mentioned the time delay for

reporting complaints. The poster (B-3) does not mention the 45-day limit and

indeed suggests several alternatives:

> Postal employees who believe that they are the victims
> of sexual harassment should bring the situation to the
> attention of impartial supervisors or managers.
>
> In addition, postal employees may seek relief through
> the Equal Employment Opportunity (EEO) complaint
> process, grievance arbitration procedures for bargaining
> unit employees under the collective bargaining agreements....
>
> Report any possible criminal conduct to the Postal Inspection
> Service.

Fee _____
Process _____
X Dktd _____
✓ CtRmDep _____
Doc.No. _____

Plaintiff followed these alternatives. In early May, 1997 plaintiff contacted the Manager of District Office (MDO) Watson via her union steward because Pierce was referring to her as his "freak" and licking his lips at her. The "freak" remarks stopped, but not the lip licking.(Ex 1)

Shortly afterwards, Pierce bit her on the shoulder, so this time she called the Postal Inspector, but this office told her that she could not file charges unless her life were in danger. In June her supervisor, Mr Williams, told her to file EEO charges, but because he had earlier warned her that she would be retaliated against and was more vulnerable during her probation period (which ended @ June 29, 1997), she did not.

Pierce had begun staring at her in a leering way from very early in her employment until the EEO complaint (and in a sometimes smirking, and lately, threatening way until December 2000 ). Pierce also began remarking that he was "into tall women" in late April/May and he continued this conduct through August/September 1997.

She complained to the EEO on September 19, 1997. She wrote a statement for a personnel employee about the harassment. (Ex A-4, pp. 145-49) In it she specifically complained that "as time progressed, Mr Pierce started making passes at me" in April. p. 145   She also complained that he bit her on the shoulder. p. 146. This statement was attached to the pre-complaint form. (Ex 2)        -2-

The EEO counselor acknowledged that plaintiff reported conduct that "had been ongoing over a period of several months." (Ex B-2, p. 175) She told plaintiff that no issues over 30 days would be accepted. (Ex. 1)

On October 15, 1997 she was transferred to station # 135 a few feet away from the place where the harassment had begun. Pierce continued to walk by, wink, and lick his lips. She applied for another transfer to mark-up in December 1997, but was denied in March 1998 in part because of her "records."

From @ February to August 1998 she was pregnant and worked on a patch up table. Pierce walked by continuously . When she returned to work in October after delivering, Pierce continued to stare, walk by, wink, and lick his lips. Meanwhile, she grieved the refusal to transfer her to mark-up and was moved on November 21, 1998 to mark-up. Pierce continued to be at her entry for her shift three-five times a week. He would stare at her in a sexual way that became threatening - his stares said, "I'm gonna get you." (Ex 1)

The staring continued until early/ mid-December 2000, some 2-3 weeks after her deposition. (Ex 1)

He has even stared at her on some of her off days (three) when they have, apparently by coincidence, been at the casino. The last occasion was in September, 2000. (Ex 1)

-3-

To return to plaintiff's work place assignments, in mid August, 1999 she was re-assigned from mark-up to the automation floor.  Although she would not work the same shift as Pierce she would have 1 ½ hour overlap with him.  Plaintiff, who had advance word, went to her treating psychiatrist who issued a statement that she could not work around Pierce.  (Ex 6)  She was pulled off the clock on @ August 18, 1999 as injurious to herself and others by MDO Aubrey Watson . (Ex 1)

She was out for about a month.  When she returned she was left in her original assignment on the oral orders of Anthony Ruda until the conclusion of this matter.  She filed a grievance which is still pending.  Later (April 26, 2000) Ruda confirmed in writing that she should be left in mark-up pending the conclusion of this matter.  (Ex 7)

## II   Defendant may not raise the time bar because plaintiff did not know about the time requirement and it actively misled her

The CFR regulation cited by defendant is subject to the exceptions of excuse and estoppel.  Where, as here, the employee does not know of the 45-day deadline, she is excused from the deadline.  29 CFR sec. 1614(a)(2).  This excuse is available even if the employee were aware of the requirement to bring complaints to the EEO counselor.  *Pauling v Sec'y of Dep't of Interior*, 160 F3d 133, 136-37 (2nd Cir 1998).  Here plaintiff was aware that the EEO was an alternative, not that it was a requirement nor that there was a 45-day time limit. (Ex 1)                    -4-

Defendant's poster (B-3) lays out three alternatives to the EEO without one mention of the 45-day limit nor of any consequences - such as the loss of federal rights. Plaintiff relied on the poster in making her complaints of sexual harassment. Defendant actively misled her into using other alternatives. Therefore, defendant is estopped from invoking the time bar. *Jenkins v Frank*, 912 F2d 517 (1st Cir 1990).

### III.    Plaintiff was subjected to a hostile work environment from early in her employment until December 2000

#### II    Plaintiff has suffered tangible employment action

As to Labor Day 1997, plaintiff contends that Pierce told plaintiff and her co-workers that no one could have Labor Day, September 1, 1997 Monday *night* shift off. (Sunday she and the others were off.) Plaintiff worked Monday night, however, Yolanda Rogers was not at work. Mover's contention that the time at issue was Sunday is not supported by its own exhibit. (A-4, p. 147) This exhibit clearly refers to Monday night. (See para. 3.)

As to the emergency leave for her daughter on September 14, 1997, plaintiff submits a signed statement from Pierce that the leave was indeed considered unscheduled. (Ex 3) The fact that the charge of an unscheduled absence was later withdrawn does not negate the finding of a tangible employment action. (Citation unavailable.)

In addition, when she was made a PTF she lost several paid holidays in 1998.

When she was pulled off the clock on August 18, 1999 she missed 128 hours of work through September 9, 1999.  Finally, in March 2000 she was preliminarily advised that her step increase would be denied and this was confirmed in December 2000. (Ex 1)

## II   Defendant's conduct constitutes pervasive sexual harassment

Plaintiff has already discussed why the conduct prior to August 1997 should be included in the complaint.

As to conduct after August, 1997 mover omits all mention of the "into tall women" remarks lasting until August/ September 1997; the licking of lips and winks until November 1998 when she was moved into mark-up; the continuous sexual, then threatening, stares she has endured at the entrance to the workplace since November 1998 until December 2000.  (Ex 1)

As to conduct after the EEO complaint of September 1997, it is not necessary for plaintiff to complain again. "When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Ingels v Thiokol Corp.,* 42 F.3d 616, 6625 (10th Cir 1994**)**.

In sum, this continuing conduct was pervasive - plaintiff could not get away

-6-

from it.

## II    Defendant cannot establish its affirmative defense

For the reasons already discussed defendant cannot show that it exercised

reasonable care to prevent or correct sexual harassment. There is no showing of the

content of the training and defendant's poster suggests several alternatives, none of

which worked for plaintiff, and no deadlines. For these same reasons, defendant

cannot show that plaintiff was unreasonable in her utilization of her opportunities.

## IV    Plaintiff states a claim of retaliation

### A.    Plaintiff suffered "ultimate employment decisions"

Plaintiff shows that she suffered "ultimate employment decisions" after she

filed the EEO complaint on September 18, 1997.[2] Specifically, when she was made

---

[2]The Fifth Circuit noted that there was a circuit split whether Title VII's protection
extended beyond ultimate employment decisions. It noted that, "We are not alone, but
we are in the minority." *Burger v Central Apartment Management, Inc.*, 168 F3d 875,
878, n. 3 (5th Cir 1999). The Fifth Circuit is now more in the minority. The Fifth Circuit
referred to the discussion of the Eleventh Circuit in *Wideman v Wal-Mart Stores, Inc.*,
141 F3d 1453, 1456 (11th Cir 1998) which found that the First, Ninth, Tenth, and DC
Circuits had extended the protection. It criticized the position of the Eighth Circuit in
*Ledergerber v Stangler*, 122 F3d 1142,1144 (8th Cir 1997). On the heels of *Ledergerber*,
the Eighth Circuit has abandoned its narrow holding. *Kim v Nash Finch Co.*, 123 F3d
1046 (8th Cir 1997)(lower performance appraisals, papering personnel file, etc.
constituted adverse employment actions where they were part of "systematic retaliation");
*Coffman v Tracker Marine, L.P.*, 141 F3d 1241, 1245-46 (8th Cir 1998)("taken together"
certain actions, e.g., more e-mail communication/less one-to-one interaction, show
adverse employment action). The Fourth Circuit has decided to wait for a "more
appropriate" case in which to decide the issue. *Smith v First Union National Bank*, 202
F3d 234, 248, n. 11 (4th Cir 2000). The Tenth Circuit has aptly described the cause of
action as one for "retaliatory harassment." *See, Gunnell v Utah Valley State College*, 152
F3d 1253 (10th Cir 1998). This is a sensible position. Why permit a cause of action for

a PTF she lost several paid holidays in 1998. When she was pulled off the clock on August 18, 1999 she missed 128 hours of work through September 9, 1999. Plaintiff grieved both losses and won. (Ex 1)

Both these actions involve granting leave and compensation and are therefore actionable. *Mattern v Eastman Kodak Co.*, 104 F3d 702, 707 (5th Cir 1997). Fifth Circuit law derives from *Page v Bolger*, 645 F2d 227, 233 (4th Cir 1981) which *see* cites Schlei & Grossman. The third edition cites a case from another circuit holding that placement on involuntary unpaid maternity leave is actionable. *Dunning v Simmons Airlines, Inc.*, 62 F3d 863, 869 (7th Cir 1995). Schlei, *infra*, at 256. It also cites a case for the holding that suspension without pay is actionable. EEOC v Kallir, et al, 401 F.Supp. 66, 70 (SDNY 1975)(later history in Schlei & Grossman, *Employment Discrimination Law*, 3d ed., vol. 1, p. 668).

## B.     Defendant raises no facts concerning causal connection

Defendant sets up no facts for this contention, but merely offers a conclusion. Plaintiff takes the position that she is not required to contest this part of the argument.

However, out of caution, she responds. Before each of the actionable

---

certain acts before complaint of gender or race harassment, but prohibit it for those same acts after complaint? Retaliation, which raises the level of permissible harassment, with no higher adverse action requirement, i.e., if the conduct were pervasive before and after the retaliation, that should suffice for a cause of action throughout.

retaliatory actions plaintiff shows a "less-than-ultimate" decision that supports

retaliatory animus.  Before she lost the paid holidays as a PFT in mark-up, she had

applied for transfer to that unit in December 1997, but was denied in March 1998

because of her "postal records."  (Ex 4) This action was reversed by grievance.

Before she was pulled off the clock her transfer to mark-up had been reversed

and she had been sent back to the same area where she had been harassed.  No

reason was given for her reassignment.  Her reassignment was made despite  no

indication that her original assignment was temporary.  (Ex 5)

In short, there is a temporal connection from the EEO complaint to being

"pulled off the clock" two years later in August 1999 and the confirmed step

increase denial in December 2000.  As the facts below show plaintiff has had a

"running battle" with the agency that stems directly from the EEO charge:

| | |
|---|---|
| September 1997- | EEO complaint filed |
| December 1997 - | Plaintiff applies for a transfer to mark-up |
| March 1998 - | Transfer denied |
| November 1998 - | Grievance awards plaintiff transfer |
| November 1998 - | Transfer reduces plaintiff to PTF at cost of holidays |
| January 1999    - | Plaintiff grieves the holiday loss/wins |
| August 1999    - | Plaintiff re-assigned from mark-up to floor |
| September 1999  - | Plaintiff grieves re-assignment/Ruda orally stops transfer till end of litigation/grievance pending |
| March 15, 2000 - | Plaintiff 's preliminary notice that step increase of 12/00 will be deferred |
| April 2000  - | Ruda writes letter that mark-up assignment is until end of litigation only |
| December 2000 - | Denial of step increase |

-9-

## CONCLUSION

The motion should be denied and the entire course of conduct found

actionable as sexual harassment.

Respectfully submitted,

J/Courtney Wilson 13561
210 Baronne
New Orleans, La 70112
525-4361

**CERTIFICATE OF SERVICE**
I certify a copy of this pleading was served by mail upon
all Counsel of Record

1/22/01 J C Wilson

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RESHONE M STEWART                    CIVIL ACTION

versus

                                     JUDGE CLEMENT
WILLIAM J HENDERSON,                 MAG. WILKINSON
    POSTMASTER GENERAL           NO. 00-0114 N/2


PLAINTIFF'S AFFIDAVIT AND STATEMENT OF CONTROVERTING
FACTS[1]

BEFORE ME, NOTARY, came and appeared

RESHONE STEWART

who did depose and say of her own personal knowledge (as to the statements
denoted by letters) that:

1.    Defendant makes no representation whatsoever that the training mentioned
the time delay for reporting complaints.

2.    The poster (B-3) does not mention the 45-day limit and indeed suggests
several alternatives:

> Postal employees who believe that they are the victims
> of sexual harassment should bring the situation to the
> attention of impartial supervisors or managers.

---

[1]    The affidavit facts are denoted by letters and the controverting facts by
numbers.

*Ex1*

In addition, postal employees may seek relief through
the Equal Employment Opportunity (EEO) complaint
process, grievance arbitration procedures for bargaining
unit employees under the collective bargaining agreements....

Report any possible criminal conduct to the Postal Inspection
Service.

AA.    She was aware that the EEO was an alternative, not that it was a requirement
nor that there was a 45-day time limit.

AAA. Plaintiff relied on the poster in making her complaints of sexual harassment.

A.    In early May, 1997 plaintiff contacted the Manager of District Office (MDO)
Watson via her union steward because Pierce was referring to her as his
"freak" and licking his lips at her.  The "freak" remarks stopped, but not the
lip licking.

B.    Shortly afterwards, Pierce bit her on the shoulder, so this time she called the
Postal Inspector, but this office told her that she could not file charges unless
her life were in danger.

C.    In June her supervisor, Mr Williams, told her to file EEO charges, but
because he had earlier warned her that she would be retaliated against and
was more vulnerable during her probation  period (which ended @ June 29,
1997), she did  not.

D.    Pierce had begun staring at her in a leering way from very early in her
employment until the EEO complaint.  Pierce also began remarking that he
was "into tall women" in late April/May and he continued this conduct
through August/September 1997.

E.    Pierce told plaintiff that she and Ms Rogers would have to work the Labor
Day, September 1, 1997 Monday *night* shift.  (Sunday she and the others
were off.)  Plaintiff worked Monday night, however, Yolanda Rogers was not
at work

3.    As to leave on September 14, 1997, Pierce signed a statement that the leave

was considered unscheduled. (Ex 3)

4.    She complained to the EEO on September 19, 1997. She wrote a statement for a personnel employee about the harassment. (Ex A-4, pp. 145-49) In it she specifically complained that "as time progressed, Mr Pierce started making passes at me" in April. p. 145  She also complained that he bit her on the shoulder. p. 146. This statement was attached to the pre-complaint form. (Ex 2)

5.    The EEO counselor acknowledged that plaintiff reported conduct that "had been ongoing over a period of several months." (Ex B-2, p. 175)

F.    The EEO counselor told plaintiff that no issues over 30 days would be accepted.

G.    On October 15, 1997 she was transferred to station # 135 a few feet away from the place where the harassment had begun. Pierce continued to walk by, wink, and lick his lips. She applied for another transfer to mark-up in December 1997, but was denied in March 1998 in part because of her "records." (Ex 4)  From @ February to August 1998 she was pregnant and worked on a patch up table. Pierce walked by continuously. When she returned to work in October after delivering Pierce continued to stare, walk by, wink, and lick his kips.  Meanwhile she grieved the refusal to transfer her to mark-up and was moved on November 21, 1998 to mark-up. Pierce continued to be at her entry for her shift three-five times a week. He would stare at her in a sexual way that became threatening - his stares said. "I'm gonna get you." The staring continued  until early/ mid-December 2000, some 2-3 weeks after her deposition.  He has even stared at her on some of her off days when they have, apparently by coincidence, been at the casino. The last occasion was in September, 2000.

H.    In mid August, 1999 she was re-assigned from mark-up to the automation floor.  Although she would not work the same shift as Pierce she would have 1 ½ hour overlap with him. Plaintiff, who had advance word, went to her treating psychiatrist who issued a statement that she could not work around Pierce. (Ex 6)  She was pulled off the clock on @ August 18, 1999 as injurious to herself and others by MDO Aubrey Watson. She was out for about a month.  When she returned she was left in her original assignment on

the oral orders of Anthony Ruda, a higher agency official, until the conclusion of this matter. She filed a grievance which is still pending. Later (April 26, 2000) Ruda confirmed in writing that she should be left in mark-up pending the conclusion of this matter. (Ex 7) Her reassignment was made notwithstanding that there was no indication that her original assignment was temporary. (Ex 5)

I.    In addition, when she was made a PTF she lost several paid holidays in 1998. When she was pulled off the clock on August 18, 1999 she missed 128 hours of work through September 9, 1999. Plaintiff grieved the holiday loss and 128 hour loss and won.

Sworn and subscribed to before me,
Notary, this____day of January, 2001

Respectfully submitted,

J Courtney Wilson 13561
210 Baronne
New Orleans, La 70112
525-4361



## Information for Precomplaint Counseling

| | |
|---|---|
| Certified No | or hand Delivered On **9-18-97** |
| By (Initials) **WHO** | Informal No |

**Important: Please Read Carefully.** This is the only notification that you will receive regarding the necessity for you to complete this form. This form should be completed and returned to the EEO Office *within 10 calendar days*

RECEIVED

On _____, 19 ____, you requested an appointment with an EEO Counselor

SEP 25 1997
OFFICE OF EEO
NEW ORLEANS DISTRICT
70113-9411

### A. Requester Information

Name (Last, First, MI)
**Stewart Reshone M**

Social Security No **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**  Home Telephone No **(504) 246-9354**

Mailing Address **7180 Whitmore Pl**

Postal Facility Where You Work **Main Post Office**  Position Title **Mail Processor**  Grade Level **4**  Office Telephone No ( )

Pay Location **134**  Tour **1**  Off Days (If Tour I, Show Nights Off) **Tues Wed**  Duty Hours **11:30 — 0700**

Employment Status (Check One)  ☐ Applicant  ☐ Casual  ☐ TE  ☑ Career

Time in Current Position _____ Years **6** Months

### B. Discrimination Factors

In the Postal Service, prohibited discrimination includes actions taken based on your *Race, Color, Religion, Sex, Age (40+), National Origin, Physical and/or Mental Disability, or Retaliation (actions based on your participation in prior EEO activity)*. These categories are referred to on this form as *factors*

What Factor(s) of Discrimination Are You Alleging (Be Specific, Describe, i e Race-Black, Sex-Female)?

**Sex- Female (Color)**
**(Complaintant) Violator-Male) (manager)**

For Retaliation Allegations Only: If you are alleging retaliation discrimination, provide the date(s) and specifics of the EEO activity which you feel caused you to be retaliated against

1  On _____, 19 ____, I engaged in EEO activity.    Case No : _____

2  On _____, 19 ____, I engaged in EEO activity.    Case No _____

### C. Description of Incident/Activity

Please use the space below to briefly describe the incident or activity which prompted you to seek EEO counseling at this time

**During the Month of August 19 97**, the following occurred: **Also during the month of September**

**See Attachment "C."**

*Ex 2*

Explain why you believe, based on the factors you cited in Section B, that you were treated differently than other employees in similar situations

1  _Yolanda Rogers_____    _Color_____
   (Name of Employee)                         (Factors, describing employee i e Race-Black Sex Female)

was treated differently than I when _We both were suppose to work_
_Labor Day and she was granted that day_

2  _____    _____
   (Name of Employee)                (Factors, describing employee i e Race-Black Sex Female)

was treated differently than I when _____

_____

3  _____    _____
   (Name of Employee)                (Factors, describing employee i e Race-Black Sex Female)

was treated differently than I when _____

_____

## D.  Officials Responsible for Action

Provide the name(s) of the official(s) who took the action which prompted you to seek counseling at this time

| 1a  Name  _Aouthur Pierce_____ | b.  Title _Supervisor (DCR)_ |
| c  Office  _Main Post Office_ | d.  Grade Level |
| 2a  Name | b  Title |
| c  Office | d.  Grade Level |

Retaliation Allegations Only:  Was/were the official(s) listed in Section D above aware of your prior EEO activity (Explain)?    ☐ Yes    ☐ No

_____

_____

## E.  Resolution Sought

What are you seeking as a resolution to your complaint?

_Allowed to work on Tour 2;_
_Also be compensated financially._
_Any Emergency Annual or Sick leave used because of this_
_I want it reimbur_

## F.  Grievance/MSPB Appeal

On the incident which prompted you to seek EEO counseling, have you.

| | | | | |
|---|---|---|---|---|
| 1  Filed a grievance on the issue? | ☐ No | ☑ Yes | If yes, _9/24/97_  (Date) | _1_  (Step) |
| 2  Filed an MSPB appeal on this issue? | ☑ No | ☐ Yes | If yes, _____  (Date Filed) | |
| 3  Veteran's Preference? | ☐ No | ☑ Yes | If yes, number of points _10_ | |

## G. Anonymity

You have the right to remain anonymous at the Counseling stage of EEO Complaint Processing

Do you desire anonymity?        ☐ Yes    ☑ No

## H. Representation

You have the right to retain representation of your choice   *(Check One)*

☐    I authorize the person listed below to represent me

_____          _____
(Name of Representative)                                                                  (Title)

_____
(Organization)

_____
(Mailing Address)

_____          (        )
(City/State/ZIP + 4)                                                              (Telephone Number)

☐    I waive the right to representation at this time.

## I. Privacy Act Statement

The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972, 29 U S C  sections 621 et seq and 701 et. seq  and Executive Order 11478 as amended This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use  this information may be disclosed to an appropriate government agency  domestic or foreign  for law enforcement purposes where pertinent, in a legal proceeding to which the USPS is a party or has an interest to a government agency in order to obtain information relevant to a USPS decision concerning employment security clearances contracts  licenses  grants  permits or other benefits  to a government agency upon its request when relevant to its decision concerning employment  security clearances security  or suitability  investigations  contracts  licenses  grants or other benefit, to a congressional office at your request  to an expert  consultant, or other person under contract with the USPS to fulfill an agency function  to the Federal Records Center for storage  to the Office of

Management and Budget for review of private relief legislation  to an independent certified public accountant during an official audit of USPS finances  to an investigator  administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission  for investigation of a formal EEO complaint under 29 CFR 1614  to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction  and to a labor organization as required by the National Labor Relations Act.  Provision of the information requested is mandatory for the complainant, and for Postal Service and other federal employee witnesses.  Failure of the complainant to provide requested information could result in the complaint being dismissed.  Failure of Postal Service and other Federal employees to provide requested information could result in disciplinary action.  Provision of the information requested by other persons is voluntary and failure to provide such information will result in no adverse effect.

## J. Documentation

Please attach any documentation you wish to submit to support your allegation(s).  Include a copy of any written action(s) which caused you to seek counseling at this time.

**Note:** If you are alleging mental and/or physical disability, you MUST submit medical documentation of your disability at this time or during counseling

## K. Authorization

Your Signature                                                               Date

*Keshene M Stewart*                                                       24 September 97

Return To

SENIOR EEO C P SPECIALIST
U S POSTAL SERVICE
P O BOX 51178
NEW ORLEANS LA 70151-1178

---

### NOTICE:  COMPLETE THIS SECTION ONLY IF YOU NO LONGER SEEK EEO COUNSELING

I hereby request that you close this file from processing.  I fully understand that this complaint file will not be reopened once closed  and I waive my right to any further EEO Appeal on this matter.  I stipulate that my decision not to pursue counseling is voluntary and did not result from threat, coercion, intimidation, promise or inducement.

Your Signature                                                               Date

C. Description of Incident/Activity

September 17, 1997

On September 17, 1997 I called in late. When I arrived it approximately 12:30 am I went into Mrs. Brenda Jones office. She told me she had to talk to me about my attendance. As we talked on one particular date which was 9/14/97. We were trying to figure out about me taking EAL (emergency annual leave) after discussing it we found out about what took place. My administrative supervisor (Shaw) told me I could leave as longas I brought back documentation that my child was sick. I did exactly that. And he told me "it would be approved as _____" He sent me to Ms. Gero to get the 3971 and I filled it out. And I explained to her that Pierce sent me to her to fill out the 3971 for EAL.

Well, after all of this Pierce told Ms. Jones he wasn't approving it. When she told me it wasn't approved I responded "I knew he would do something like that" (Meaning lie and say he didn't say it) Ms. Jones asked me "Why" I told her I had spoke to Leonan Price about filing sexual harassment charges against my Pierce. When I Started at the Post Office back in March, Longwyed came here. Then as time progressed, Mr. Pierce starting making passes at me. On one occasion he told me he liked tall women and told him that was his business. (This was about in the month of April) Then I were a orange shirt with my checkiest _____ ___

he told me don't wear it
anymore. I asked "Why?")
He responded "I may be into
shoulders, you never know" This
happened when I went to bring
my rejects to OCR. I just walked
away after telling him don't
play me. Later on, this particular
night, he came on my machine
which was DBCS #4 at that
time and while I was about to
sweep one of my leads he bit
me on the shoulder. I pushed
him away and told him to stay
away from me or I would file
charges.

As time went on he would
speak and keep going. Then
One night he came into the cut area
and saw me talking to Kirkland.
He told Kirkland, "You know,
I thought me & Stewart were friends
but she told me she was going to
file sexual harassment charges
against me." I responded, "Tell
him why!" I went on to tell
Kirkland about my reasons for
feeling this way about him. I told
him that friends respect your wishes,
I tell you not to play with me in
a certain way then you do just that. He
disrespected my wishes so I chose
not to be friends. Kirkland said,
I understand where you're coming from.
I've even told Cornel Rawls some-
one who I've known before I started
working here to talk to Cornel because
I thought he can get some sense into
his head since they were Masons.

He went on to just
speaking ~~again~~ again until
one morning about a month +
a half ago when when we
got off and I was standing
by my car, he passed and
asked me to go to breakfast.
I just rolled my eyes and
ignored him.

Mr. Pierce is my Administra-
supervisor at this present time and
I went to him about taking EAL
because I understood I had to
because a 204 B can't approve it.
I told him I would sacrifice my
child being sick if it wouldn't
be approved because I didn't
want it to be unscheduled. He
specifically told me if I brought
in documentation it would be approved.
I did just that and still told
Ms. Jones it wasn't approved.

On another occasion he
had a meeting with Pay Location
134 + told us that all PTF's
had to work Friday prior to Labor
Day + Labor Day. He said, if you're
off ~~work on~~ on Monday night which was
Labor Day he had to give us another
off day. And I came around with a
little piece of paper and gave us
another day. Well, Yolanda Legree
and I mentioned that we had
made plans and he said it didn't
matter all PTF's had to work.
I specifically asked him was Yolanda
off and he told me no. Well,
I came to work on Monday night
and discovered that Mr. Legree
was off. I went to the union

and spoke to Seymour twice
about it. I explained to him.
everything Pierce told us about
being off and I asked him
to check into it to see if Ms
Rogers was off like she called
in. If so, I wanted to file
a grievance against Pierce.

Well, one day last week
Mr. Pierce came to me and told
me she was definitely off that night
and I told him to make sure he
files it because it seemed personal.
I don't know what kind
of people he's used to dealing
with but I've told him I'm not
that way and don't do
it. Mr. Pierce seems as though
he's trying to get at me for
not entertaining him. I've
been dealing with it for a
couple of months but mainly
I dealt with it during my
probationary period because I
didn't want to be let
~~go~~ go.
I understood that you can
be let go and not have
to give you a reason. I'm sorry
it ~~had~~ came out this way but
I'm truly tired of it. I did
call EEO and talked to Ms
Rita Scott about it. I didn't
get to talk long because she going
into a meeting. She told me to get
back to her. I left a message
on Mr. Hamitte (Charles) answering
machine telling him I needed to
speak to him about something I was
dealing with it...

contacted me. I hope this
matter can be resolved as
soon as possible because
it's disgusting coming to
work dealing with.

_____

September 24, 1997

I would like to add some things that also
occured. One night my former Supervisor
Ray Williams called here. My supervisor
Al Jarreau who was acting in my ~~was~~ Pay
Location told me Ms. Brenda Jones needed
me in Time & Attendance. When I went there
she told me my ~~employees~~ supervisor wanted
to speak me. Mr Williams asked me how
things were going and what was going on
his unit because he was ~~been~~ being told
it was alot ~~unnecessary~~ unnecessary things
taking place. I explained to him what
was taking place and also the fact that
I was going to file sexual harassment
charges against his friend Mr. Pierce.
I told him to try and to talk to him.
Ray responded, " File the charges! ; You told
him to stop and he didn't so so do
what you have to." Also, the fact
that once in that area he looked at
me in a very seductive way telling me
he wanted something sweet eat. What Sould
he get. Ray Williams was present and
also Will Smith (PTF)

Kishone M Stewart
24 September 97

Kishone M Stewart
18 -------- 97



**EEO Investigative Affidavit**

**(Continuation Sheet)**

UNITED STATES
POSTAL SERVICE

| Page No. | No. Pages | Case No. |
|---|---|---|
| 6 | 6 | |

/

#9.    THE COMPLAINANT NEVER BROUGHT ME THE DOCUMENTATION REQUESTED

NOR to MY MEMORY to TIME & ATTENDANCE, SO THE ABSENCE WAS

UNSCHEDULED.

| Affiant's Signature | Date | |
|---|---|---|
| | 8/31/98 | Ex 3 |

PS Form **2569**, September 1992

AFFIDAVIT B

SR PERSONNEL SERVICES SPECIALIST
LOUISIANA DISTRICT


UNITED STATES
POSTAL SERVICE

MARCH 16, 1998


RESHONE M STEWART
7180 WHITMORE PL
NEW ORLEANS LA 70128-4627

Dear Ms. Stewart:

This refers to your request for reassignment in the New Orleans Post Office.

Your request was considered and compared with others seeking the same position. This entails review and assessment of your postal records. Your records were carefully reviewed and full and fair consideration was given to your request

In review of your record and in relation to other available candidates, your request for reassignment is denied at this time. You may resubmit a request for reassignment consideration one (1) year from the date of denial.

Sincerely,


Mildred P. Martinez


701 LOYOLA AVENUE ROOM T2009
NEW ORLEANS LA 70113-9421
(504) 589-1193
FAX (504) 589-1196

Ex 4

POSTMASTER

 **UNITED STATES**
**POSTAL SERVICE**

**Date:** November 5, 1998

**Subject:** Step 2 Grievance Decision/Resolution
Case Number: 98-0212-Reshone M. Stewart

**To:** Mr. James L. Oliver, Jr.
President
American Postal Workers Union
4072-74 Old Gentilly Road
New Orleans, LA 70126-4898

This is in reference to the above captioned grievance which was discussed with your representative, Robert L. Brooks, Sr. on November 4th, 1998. The time limit on processing this Grievance at Step 2 was extended by mutual consent.

In accordance with Article 15, Section 2, Step 2(f), all relevant facts as they pertain to this Grievance have been carefully reviewed and thoroughly investigated.

On a non-precedent, non-citable basis, the Grievance was mutually resolved in the following manner.

The Grievant Request/Transfer/Reassignment to the Centralized Forwarding System (CFS) as an automated Mark-Up Clerk will be granted, effective November 21, 1998.

Philip E. Holland
Postmaster

Robert Brooks
APWU Representative

701 LOYOLA AVENUE RM 3210
NEW ORLEANS LA 70113-9998
OFFICE 589-1421
FAX 589-1499

Ex5

Recieved
Mid Unit
P. Metairie
8/11/19

## PHYSICIAN'S STATEMENT OF LIGHT DUTY
**Please be as specific as possible with requested restrictions.**

Physician's Name __Dr. Indira Kailas__ Ph.# __504) 885-6789__

Address __4051 Vet. Suite 301 Metairie__ Fax # __504) 456-7800__
__LA 70002__

1. Maximum weight employee can lift regularly (Pounds) __N/A__

2. Standing limitations __N/A__

3. Other restrictions ( Be as specific as possible) __Miss Sorell should be working__
__in a place where she does not have to interact with the__
__supervisor with whom she is having problems.__

4. Expected Duration of Temporary Light Duty status: __3-4 months.__

5. (DX) DRG / ICD-9 CODE: __Adj dis c Depressed Mood__ I certify I have evaluated this patient.

I further certify this employee is in need of LIGHT DUTY for the specified period.

Signature __Indira Kaila__ Date: __8/03/99.__
(Original Physician Signature Only- Stamp Not Acceptable)

### EMPLOYEES SECTION TO COMPLETE

EMPLOYEE NAME __Reshone Stewart__ SSN __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__

CRAFT / POSITION __Clerk/Mark-up Clk__ P/L __050__ Tour __(2)__ __10-6:30pm__

Home Address (City, Zip + 4) __7180 Whitmore Pl NOLA 70128-46__

Home Phone __246-9354__ Wk Phone __589-1134__ Alternate Phone _____

Status ( Circle )  PTF  (FTR)  PTR  TE  Other: _____ Date of Birth: __11-16-67__

Beginning Date of Postal Service __29 Mar 97__ Seniority Date __Same__

Immediate Supervisor __Mrs. Mae Dunbar__ Phone __589-1134__

Date Last Worked __29 Jul 99__ Installation Assigned __701 Loyola__

I certify I have read and understand the above information.  I further certify all information supplied is, to the best of my knowledge, true.

I understand if I report with restrictions other than that requested in writing by the physician, the light duty approval is not valid and will not be honored.

Employee Signature __Reshone Stewart__ DATE __29 July 99__
Note: Complete application form must be returned directly to the Medical Unit / Postmaster.

For U.S.P.S. Medical Officer _____ Date _____
Dr. Anthony J. Bouligny, MD
701 Loyola Avenue, Room 2008
New Orleans LA 70113-9451    Phone 504-589-1174  Pager 888.389.1174  Fax # ▒▒▒

_Ex 6_

4/26/00

• Reverend Stewart has been assigned to CFS until the disposition of her current EEO. She and will be and we agreed upon the completion and hearing of her case that she will then be reassigned.

Ex7