

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RESHONE M STEWART | CIVIL ACTION |
| versus | |
| WILLIAM J HENDERSON, POSTMASTER GENERAL | JUDGE CLEMENT<br>MAG. WILKINSON<br>NO. 00-0114 N/2 |

**EX PARTE MOTION AND MEMORANDUM FOR LEAVE TO FILE SWORN AND CORRECTED
PLAINTIFF'S AFFIDAVIT AND STATEMENT OF CONTROVERTING FACTS**

Plaintiff moves for leave to file her sworn affidavit in lieu of the unsigned affidavit filed with her opposition. The affidavit has been corrected in two places. First, at A, the name of Ray Williams has been substituted for that of Watson. Second, at G, she has added the fact that she submitted a Witness Statement in connection with Pierce's conduct on her return to work after her pregnancy. (No corresponding exhibit is being offered.) The proposed affidavit is attached.

Respectfully submitted,

J Courtney Wilson 13561
210 Baronne
New Orleans, La 70112
525-4361

CERTIFICATE OF SERVICE
I certify a copy of this Pleading was served by mail upon all Counsel of Record
Attorney at Law

DATE OF ENTRY
JAN 2 6 2001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RESHONE M STEWART

CIVIL ACTION

versus

WILLIAM J HENDERSON,
    POSTMASTER GENERAL

JUDGE CLEMENT
MAG. WILKINSON
NO. 00-0114 N/2

## ORDER ON
## EX PARTE MOTION AND MEMORANDUM FOR LEAVE TO FILE SWORN AND CORRECTED
## PLAINTIFF'S AFFIDAVIT AND STATEMENT OF CONTROVERTING FACTS

IT IS ORDERED that plaintiff be permitted to file her sworn and corrected affidavit.

New Orleans, La, this 26th day of January, 2001.

_____
UNITED STATES MAG. JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RESHONE M STEWART                        CIVIL ACTION

versus
                                         JUDGE CLEMENT
WILLIAM J HENDERSON,                     MAG. WILKINSON
    POSTMASTER GENERAL                   NO. 00-0114 N/2

PLAINTIFF'S AFFIDAVIT AND STATEMENT OF CONTROVERTING FACTS[1]

BEFORE ME, NOTARY, came and appeared

RESHONE STEWART

who did depose and say of her own personal knowledge (as to the statements denoted by letters) that:

1.   Defendant makes no representation whatsoever that the training mentioned the time delay for reporting complaints.

2.   The poster (B-3) does not mention the 45-day limit and indeed suggests several alternatives:

>   Postal employees who believe that they are the victims of sexual harassment should bring the situation to the attention of impartial supervisors or managers.

---

[1] The affidavit facts are denoted by letters and the controverting facts by numbers.

> In addition, postal employees may seek relief through the Equal Employment Opportunity (EEO) complaint process, grievance arbitration procedures for bargaining unit employees under the collective bargaining agreements....
>
> Report any possible criminal conduct to the Postal Inspection Service.

AA.   She was aware that the EEO was an alternative, not that it was a requirement nor that there was a 45-day time limit.

AAA. Plaintiff relied on the poster in making her complaints of sexual harassment.

A.    In early May, 1997 plaintiff contacted the her then supervisor, Ray Williams, via her union steward because Pierce was referring to her as his "freak" and licking his lips at her. The "freak" remarks stopped, but not the lip licking.

B.    Shortly afterwards, Pierce bit her on the shoulder, so this time she called the Postal Inspector, but this office told her that she could not file charges unless her life were in danger.

C.    In June her supervisor, Mr Williams, told her to file EEO charges, but because he had earlier warned her that she would be retaliated against and was more vulnerable during her probation period (which ended @ June 29, 1997), she did not.

D.    Pierce had begun staring at her in a leering way from very early in her employment until the EEO complaint. Pierce also began remarking that he was "into tall women" in late April/May and he continued this conduct through August/September 1997.

E.    Pierce told plaintiff that she and Ms Rogers would have to work the Labor Day, September 1, 1997 Monday *night* shift. (Sunday she and the others were off.) Plaintiff worked Monday night, however, Yolanda Rogers was not at work

3.    As to leave on September 14, 1997, Pierce signed a statement that the leave was considered unscheduled. (Ex 3)

-2-

4. She complained to the EEO on September 19, 1997. She wrote a statement for a personnel employee about the harassment. (Ex A-4, pp. 145-49) In it she specifically complained that "as time progressed, Mr Pierce started making passes at me" in April. p. 145 She also complained that he bit her on the shoulder. p. 146. This statement was attached to the pre-complaint form. (Ex 2)

5. The EEO counselor acknowledged that plaintiff reported conduct that "had been ongoing over a period of several months." (Ex B-2, p. 175)

F. The EEO counselor told plaintiff that no issues over 30 days would be accepted.

G. On October 15, 1997 she was transferred to station # 135 a few feet away from the place where the harassment had begun. Pierce continued to walk by, wink, and lick his lips. She applied for another transfer to mark-up in December 1997, but was denied in March 1998 in part because of her "records." (Ex 4) From @ February to August 1998 she was pregnant and worked on a patch up table. Pierce walked by continuously. When she returned to work in October after delivering Pierce continued to stare, walk by, wink, and lick his kips. She submitted a Witness Statement. Meanwhile she grieved the refusal to transfer her to mark-up and was moved on November 21, 1998 to mark-up. Pierce continued to be at her entry for her shift three-five times a week. He would stare at her in a sexual way that became threatening - his stares said, "I'm gonna get you." The staring continued until early/ mid-December 2000, some 2-3 weeks after her deposition. He has even stared at her on some of her off days when they have, apparently by coincidence, been at the casino. The last occasion was in September, 2000.

H. In mid August, 1999 she was re-assigned from mark-up to the automation floor. Although she would not work the same shift as Pierce she would have 1 ½ hour overlap with him. Plaintiff, who had advance word, went to her treating psychiatrist who issued a statement that she could not work around Pierce. (Ex 6) She was pulled off the clock on @ August 18, 1999 as injurious to herself and others by MDO Aubrey Watson. She was out for about a month. When she returned she was left in her original assignment on

the oral orders of Anthony Ruda, a higher agency official, until the conclusion of this matter. She filed a grievance which is still pending. Later (April 26, 2000) Ruda confirmed in writing that she should be left in mark-up pending the conclusion of this matter. (Ex 7) Her reassignment was made notwithstanding that there was no indication that her original assignment was temporary. (Ex 5)

I.  In addition, when she was made a PTF she lost several paid holidays in 1998. When she was pulled off the clock on August 18, 1999 she missed 128 hours of work through September 9, 1999. Plaintiff grieved the holiday loss and 128 hour loss and won.

*Keshone Stewart*
Keshone Stewart

Sworn and subscribed to before me,
Notary, this 24 day of January, 2001

*Courtney Wilson*

Respectfully submitted,
*Courtney Wilson*
J. Courtney Wilson 13561
210 Baronne
New Orleans, La 70112
525-4361