

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RESHONE M STEWART

versus

WILLIAM J HENDERSON,
    POSTMASTER GENERAL

CIVIL ACTION

JUDGE CLEMENT
MAG. WILKINSON
NO. 00-0114 N/2

## COURT-PERMITTED RESPONSE TO DEFENDANT'S REPLY ON MOTION FOR SUMMARY JUDGMENT

**I.    This court does not lack subject matter jurisdiction over acts before August 4, 1997.**

The Fifth Circuit has never considered plaintiff's tolling argument and therefore has not specifically rejected it.

The *Barrow* case cited by defendant does not hold that tolling is unavailable to one left ignorant of filing deadlines by the failure of the employer to post them. More specifically, *Barrow* did not involve a plaintiff who claimed that the employer had failed to post the filing deadlines and had suggested alternative processes. Moreover, *Barrow* cites *Larson v American Wheel & Brake, Inc*, 610 F2d 505 (8th Cir 1979). *Larson* noted that plaintiff had not alleged that the employer failed to

post the filing deadlines. at 510. Nor did Larson allege that the notice had suggested alternatives.

*James v USPS*, 835 F.2d 1265 (8th Cir 1988) also cited by defendant, similarly is not on point because it also does not involve the employer's failure to post the deadlines. (Nor, obviously, does either case involve compounding that failure with the suggestion that an employee use alternatives while the clock runs.)

Accordingly, defendant's authorities are distinguishable and inapplicable.

Defendant's argument about lack of diligence ignores that when plaintiff's supervisor told her the second time to file EEO charges he had already poisoned the well when he warned her the first time about her vulnerability during her probationary period  The same argument also applies as to defendant's claim that plaintiff should have filed an EEO charge after referral by her union steward; she was still in her probationary period.  Furthermore, the EEO apparently did not respond when she did try on the first occasion. (*See* defendant's citations.)

Defendant argues again that plaintiff should not have been "intimated" (sic) from filing as a probationary employee because she had not been shy about doing it before she was hired. This argument fails on the old adages of "nothing ventured, nothing gained" and "a bird in hand is worth two in the bush." One's interests and considerations are obviously different when one is trying to get hired and there is

less to lose as compared to the situation once one is hired and actually has something to lose, particularly when the EEO option was coupled with a warning. Nor is there any showing that there was a deadline for the EEO charge prior to hiring.

The court should hold that equitable tolling applies.

**II     Plaintiff has established a hostile work environment.**

>   **A.     Plaintiff suffered tangible employment action by the supervisory harasser in 1997 so as to impose absolute liability.**

Plaintiff has nothing further to add to her Labor "Day" argument. Defendant persists in misconstruing the issue; plaintiff states that Monday night was the work period in dispute no matter what it is called.

As to authority that reversing the withdrawn, unscheduled absence constitutes tangible employment action, plaintiff cites *EEOC v LB Foster*, 123 F.3d 746, 754 (3d Cir 1997), *cert. den.* (There is a direct cite, but it can still not be located.) In this case the employer refused to provide a job reference, but the employee found employment. The Court held that (in the Third Circuit) this refusal was an adverse employment action. "An employer who retaliates cannot escape liability merely because the retaliation falls short of its intended result."

As to the remainder of the actions, her affidavit, like her testimony, is competent to establish a disputed fact.

The next issue is whether the actions after 1997, i.e., in 1998, 1999, and 2000, qualify as acts of her supervisors such as to impose absolute liability. As to these later acts, she refers the court to her original memorandum (p. 9)[1] which shows that there are close temporal events linking the tangible employment actions to later protected complaints so that there is a "running" battle with her supervisors stemming from the original EEO complaint. Therefore, as to all acts defendant is not entitled to the affirmative defense and is absolutely liable.

### B.   The conduct was severe and pervasive enough to alter the working conditions.

---

[1]   This section has been enlarged to include two complaints, October 21, 1998 and August 11, 1999, omitted from the Opposition and attached to this pleading.

September 1997 -   EEO complaint filed
December 1997 -    Plaintiff applies for a transfer to mark-up
March 1998 -       Transfer denied
October 21, 1998 - Plaintiff's witness statement vs Pierce's harassment
November 1998 -    Grievance awards plaintiff transfer
November 1998 -    Transfer reduces plaintiff to PTF at cost of holidays
January 1999   -   Plaintiff grieves the holiday loss/wins
August 5, 1999  -  Plaintiff re-assigned from mark-up to floor
August 11, 1999 -  Plaintiff files new EEO complaint
September 1999 -   Plaintiff grieves re-assignment/Ruda orally stops
                    transfer till end of litigation/grievance pending
March 15, 2000 -   Plaintiff's preliminary notice that step increase of 12/00 will be
                    deferred
April 2000 -       Ruda writes letter that mark-up assignment is until
                    end of litigation only
December 2000 -    Denial of step increase

-4-

sought EEOC counseling is irrelevant to her working conditions.

Turning to defendant's recitation of plaintiff's complaints, defendant again becomes myopic and although including some of her complaints chooses to omit the most significant. That is the complaint that Pierce has stared at her in a continuous sexual and, now, threatening way for more than three years both on and off the job. The present facts are clearly distinguishable from those in *Shepherd* where there is no allegation of threatening stares and a duration of "only" two years.

Furthermore, plaintiff's competence on her job has been affected. This affect further distinguishes *Shepherd*. This is made clear in the attached report of defendant's expert at p. 7, attached. This states:

> Sometimes I sit at the computer and look at it. It is hard for me to stay focused. [Her supervisor] just gave me an "unsatisfactory" a month of two ago.

At p. 8:

> When the alarm goes off, I get sick to my stomach. That's how bad I feel about going there.

The origin of these feelings is traced in her medical file in the reports from her doctor, Dr Kailas:

> Change the place of supervisor work. Statement of light duty, 9/25/97 (The term "supervisor" is lined through.)

There was no doubt about the source of plaintiff's emotional distress in 1999:

> Miss Sorrell [plaintiff's maiden name] should be working in a place where she does not have to interact with the supervisor with whom she is having problems. Statement of light duty, 8/03/99.

The next statement was even more specific:

> Miss Sorrell should be working in a place where she does where she will not be interacting with the (sic) Arthur Pierce with whom she had problem. 8/30/99

### C. Defendant cannot establish the affirmative defense

Assuming that defendant is entitled to the affirmative defense for all or part of the periods at issue, defendant cannot meet its burden. For the reasons that the poster was inherently defective; its own supervisor cautioned plaintiff against filing during her probationary period and did nothing himself; and Parks' investigation and remedy never addressed the continuing harassment after 1997; defendant cannot satisfy the first prong of the defense.

Defendant cannot satisfy the second prong. Defendant must show that plaintiff unreasonably failed to take advantage of her opportunities. She tried the very alternatives suggested by defendant's poster.

### III. Plaintiff states a claim of retaliatory discrimination

Defendant's sole complaint here is that plaintiff's evidence is not competent to establish a contradictory fact. Defendant does not explain why nor offer any authority. This contention should be rejected.

Temporal proximity raises the inference that the chain of events about which she complains are causally connected. Defendant improperly narrows the protected activity to her September 1997 complaint when plaintiff filed a string of complaints about her treatment. (Memorandum in opposition, p. 9.)

Temporal proximity between the protected activity and the retaliation is evidence of animus. The "timing of the adverse employment action can be a significant, although not necessarily determinative factor." *Mayberry v Vought Aircraft Co.*, 55 F3d 1086, 1092 (5th Cir 1995), citing *Shirley v Chrysler First, Inc.*, 970 F2d 29 (5th Cir 1992)(fourteen months between conduct and action).

The Fifth Circuit has refused to set up a *per se* rule of how a given length of time - a short period or a longer one - operates as a matter of law. Indeed, defendant cites no authority for its assertion that nine months is too long to entitle plaintiff to a retaliatory inference. In *Shirley* the defendant claimed that 14 months between the protected activity and the actionable retaliation was too long to justify an inference of retaliatory motive. The court examined one case holding that a

-7-

period of time was too long and one that a short period of time "belied" any defense. n. 8. The court held:

> Consideration of such dates is part of our analysis, but not in itself conclusive of our determination of retaliation. at 44.

The court should find that for motion purposes plaintiff has established a "running" nexus from the September 1997 complaint through the later complaints and ultimate employment decisions.

## CONCLUSION

The court should find that plaintiff timely filed her EEO complaint as to matters before August 4, 1997; that she suffered a series of "tangible employment actions" from her supervisors, from Pierce on up, such that defendant is absolutely liable; or, if not, that the actions are non-supervisory harassment; that she suffered "ultimate [retaliatory] employment decisions" actions related to and stemming from her original September 1997 complaint and her ongoing complaints of discrimination and retaliation; and because of Pierce's conduct and the employment actions she suffered a hostile work environment that has affected her competence.

Respectfully submitted,

*J. Courtney Wilson*
J. Courtney Wilson 13561
210 Baronne
New Orleans, La 70112
525-4361

**CERTIFICATE OF SERVICE**
I CERTIFY A COPY OF THIS PLEADING WAS SERVED BY MAIL UPON ALL COUNSEL OF RECORD

_____
ATTORNEY AT LAW

AMERICAN POSTAL WORKERS UNION, AFL-CIO
NEW ORLEANS LOCAL
WITNESS STATEMENT

NAME Reshon M. Stewart (SIGNATURE OF EMPLOYEE)
PAY LOCATION 135
TOUR OF DUTY Tour I (11:30 - 7:00)
SCHEDULED OFF DAYS Flex

Today is October 21, 1998. It is 02:40am. I am writing concerning SDO Arthur Pierce. I would like to know why he is allowed to constantly walk in my unit. I was assigned to pay location 135 to supposely separate us. Mr. Pierce acts as a MDO, so he walks wherever he chooses. I don't feel it is fair to me.

On Oct 20, 1998, he walked clearly pass my machine on three different occasions. It really irritates me that this is allowed to happen. Tonight he walked passed my machine as well. But, I really became frustrated when he actually came on my machine to check something out on the machine. I am sure he was not the only SDO qualified to do whatever was required.

These two days are not the only

WITNESS STATEMENT                                   PAGE ___ OF ___

time he has came in my unit walking slowly pass my machine. I don't know if it is to intimidate me or what. Now, I am fed up with it. A person can only take so much. It's bad enough if he acts as MDO and walk everywhere. If the job requires the MDO walk and check every unit, there should be another MDO assigned to my unit. I'm sure the MDO's know they moved me to 135 to supposely separated us until the matter is resolved. If they allow him to walk in my unit as he chooses, then something else must be done.

I hope this matter can be resolved as soon as possible because I will not continue to be harrassed.

Thank You,

Loshane M Stewart

ATTACHMENT TO PRECOMPLAINT COUNSELING FORM
RESHONE STEWART
8/11/99

This is intended to be a supplement to Case No 4G700005899 that updates the allegation of retaliation in that matter. I am asking that this matter be consolidated with 5899 immediately and that the entire matter be consolidated with the allegation of sexual harassment against Mr Pierce (Case No.1G 701 0008 98)(filed September 18, 1997).

On October 20, 1997 a co-worker told me that Pierce told her that he would get me when it was all over.

On December 17,1997 I requested a transfer to Mark up. It was denied because of my postal records. I grieved and settled for a transfer effective November 21, 1998. As part of my grievance I alleged that the denial of the transfer was because of my earlier allegations of sexual harassment (Case No.1G 701 0008 98).

During the pendency of my grievance Mr Pierce frequently walked past my new machine in a work area to which I had been assigned (@ late 1997)in order to be separated from him. This had begun immediately after my transfer. He would look at me in a threatening fashion. On October 21, 1998 I filed a witness statement with the Union. I got not relief and Pierce continued to come around until I was transferred to Mark up on November 21, 1998.

My new job will overlap for 1-2 hours at night with Pierce and am not supposed to have to work around him.

In February 1998 Pierce refused to let me punch in for light duty when I was pregnant because I had to wait for the light duty committee to approve my light duty. I filed a pending EEO complaint (1G 701 005498). He had let Terry Ancar do this without committee approval.

Soon after I was transferred my union steward began telling me several times a week that management referred to me as "trouble." This has persisted to date.

My union steward has also told me that he has seen several e-mails from Trevor (whose full name I do not know) trying to force me out of the Mark up job.

These disclosures have occurred for several months and the last was about mid July, 1999.

In addition, my union steward told me 2-3 weeks ago that Mack Boyd, head of labor relations, has asked him why he told such interest in my case. Brooks replied that there are others who are unassigned - why single her out?

On August 5, 1999 I was removed from Mark up.

As I alleged in 58-99 while in the Mark up job, I was knocked down from regular to part time so was not paid for holidays and my leave was messed up.

In December 1998 a class action over lack of part time work was settled, but I did not get a check. Mr Coleman, a union steward, told me that Judy Miller, post office management, settled on the condition that I be dropped. The union then told me that it would file a grievance on my behalf, but I learned recently that it did not.

As a result of the continuing harassment and retaliation my medical condition is now such that my nightmares are back and I feel my anger could get out of control. I am on an anti-depressant and a change of job situation has been recommended. See attached from Dr Kailas, 8/4/99.

*Harold M. Ginzburg, M.D., J.D., M.P.H.*
*Suite 630*
*Two Lakeway Center*
*3850 North Causeway Boulevard*
*Metairie, Louisiana  70002-1752*
*telephone: 504-836-5575   telecopier: 504-836-5040*

January 22, 2001

### Neuropsychiatric Evaluation of
### Reshone Monica Stewart (Sorrell)

**Introduction**
The office of Ms. Sandra Gutierrez, Esq., United States Department of Justice, Hale Boggs Building, 501 Magazine Street, Second Floor, New Orleans, Louisiana  70130, telephone number 504-680-3124, telecopier number 504-589-3602, requested that I conduct a psychiatric evaluation of **Reshone Stewart,** to determine the presence of any psychiatric dysfunction that may have resulted from her work related difficulties as a mail processor for the United States Postal Service.

I conducted a two-hour evaluation of Mrs. Stewart, in my office, in the Lakeway Center on November 30, 2000.  At the commencement of the evaluation, I explained to Mrs. Stewart that Mrs. Gutierrez had requested me to conduct the psychiatric evaluation.  I further explained that, as a result of the evaluation, I would be preparing a report which would be provided to Ms. Gutierrez, and that she would be providing a copy of the report to Mrs. Stewart's attorney.

Mrs. Stewart was informed that I would be seeing her for an evaluation and that there was no doctor-patient confidentiality as this was an evaluation requested by a third party as part of pending litigation.  She stated that she understood what I had explained to her, and agreed to participate in the evaluation.

**Records Reviewed**
Prior to the evaluation, I reviewed the following records.  They were provided by Ms. Sandra Gutierrez's office

| | |
|---|---|
| (1) | Discovery responses. |
| (2) | Office of Personnel File. |
| (3) | Medical folder. |
| (4) | Disciplinary file. |
| (5) | Dr. Indira Kailas' notes.  Initial diagnosis:  Adjustment disorder with depressed mood [9/22/97].  Last prescription medication – Paxil 20 mg. |
| (6) | Deposition of Reshone M. Stewart taken on November 6, 2000. |

Mrs. Stewart is oriented to time, place, person and circumstances. Her memory for remote and recent events is consistent with historical events and her medical history. She reports, "I have had a couple of nightmares where I have thought he has been in my house. That did happen on a couple of occasions." She indicates that she knew they were nightmares. There are no reported auditory or visual hallucinations. She denies any suicidal ideation, plans or gestures. She indicates that in the past, "I told Dr. Kailas that I wanted to hurt him. I don't think I could kill him. He will get his justice." She denies any present homicidal ideation or any present or past homicidal plans or intentions. "A couple of times I have been on the telephone with my best friend, I have heard this clicking. I tell her, at this point, I don't even care. Sometimes, I feel they are watching me or following me." 'They' being the postal inspectors. She notes that her last evaluation, in 1997, was satisfactory. She reports, "sometimes, I sit at the computer and look at it. It is hard for me to stay focused. She [her supervisor] just gave me an 'unsatisfactory' a month or two ago." She states, "they are trying to push me out of the job I was awarded. I went to the district manager; he sent paper work for me to stay where I am at. He wasn't worried about the settlement [to have her present position], he was worried about the sexual harassment suit." He stated, "I need to find out about the sexual harassment case, I don't tolerate that."

Mrs. Stewart explains that Dr. Indira Kailas has been treating her mother for many years and so it was comfortable for her to be seen by her. At the present time, Mrs. Stewart is reported to be on Paxil. In the past, she notes, she has used Effexor. "I have a problem being on the medicine. I am stressed and depressed. Some days I take the medicine and some days I don't. I promised her, from this day on, I will take it." Mrs. Stewart reports that she sees Dr. Kailas "every month, but there have been a couple of occasions where I have been to see her in two weeks. The appointment before Monday I had to miss because they scheduled a deposition." Mrs. Stewart reports that the appointments are "30 – 45" minutes and "I use my husband's insurance". There apparently is no 'co-pay'.

Mrs. Stewart reports, "I get dizzy, but I can control it. I sit down. Then, I was physical. Now, I get headaches. I sit down and it goes away." We discuss how Paxil sometimes may, according to her, increase her headaches and dizziness. She is advised to try taking the Paxil at night, before sleep, so that she will not experience the dizziness because she will be prone. We discuss how she feels that her "mental condition" may evolve into a condition that is similar to her mother's. She indicates that no other relatives have emotional or psychiatric illnesses.

7

Mrs. Stewart reports, "I can't drink. If I get a daiquiri, it lasts four days. I hate the taste of beer." She indicates that she does not smoke. She reports that her husband has accused her of being "boring". She reports that she has no desire for sexual relations with her husband. She had a tubal ligation after the last child was born. She reports snacking every night and her weight has been increasing. "I eat for no reason; I don't do anything."

Mrs. Stewart reports that "I go to the EAP. I had an appointment Tuesday. Sometimes I get real forgetful. They say it is supposed to be confidential. But, people in the post office know I go. It helps a little. She's not a psychiatrist. That word bothers me. I have been to her a couple of times." The EAP, Mrs. Goss, "is private". Mrs. Stewart reports, "when I was in the deposition, the attorney was asking whether I had been seeing another psychiatrist or psychologist. I had someone come over to me on the floor and asked me if I was going to EAP. They even had a meeting where they asked everyone in my pay section if they knew of anyone being sexually harassed. The union steward told me about the meeting months later." Apparently, at that meeting, one individual identified Mrs. Stewart as someone he knew to be harassed by a supervisor.

Mrs. Stewart reports that she does not have any friends at the post office. She indicates that she works from 6 A.M. to 2:30 P.M. Her husband, she notes, takes the children to Catholic School – St. Simon Peter on Gannon Road, not far from their home. She indicates that "sometimes I am able to make it there by 3:15" and other times they wait in the aftercare program. Her husband works, she notes from 8:45 in the morning but "he don't get home until 7:30". She states that her husband works 'full-time' and has benefits. She reports "I was out of work for my depositions, I don't have any leave".

Mrs. Stewart notes, "I try to explain to my supervisor, she doesn't have kids. She is concerned about my attendance. Even with my mom, there is no one but me. I can't say that my sister will take care of it. I have to ease her pain. I even told Dr. Kailas that I never thought I would feel like this, that I have to ask G-d's forgiveness when my mother is sick. My husband broke his leg in February so I couldn't go to work. When the alarm goes off, I get sick to my stomach. That's how bad I feel about going there." She reports that she cannot be a carrier because of her disability. "I know I can't do that. I have a lot of clerical experience. If I try to work on the other side of the wall, administrative, because of my situation. All that has stopped. I even had to file EEO's against personnel. They are all management. All I can do is 'bid'. I took all the clerical tests. They have limited me. Even if I try to go to another government job, they might not hire me. I can understand why some people go 'postal'. If you were raised with values and morals, you wouldn't want to be at the post office." She notes, "my base salary is $ 34,000" plus overtime could bring up her annual wage to "$ 40,000". She notes that is why "some witnesses are scared for their job."

8

# PHYSICIAN'S STATEMENT OF LIGHT DUTY

## SECTION I

NOTE TO PHYSICIAN: Please help in protecting the best interests of your patient and our employee by being as specific as possible concerning the employee's weight, standing and work-hour restrictions.

Physician's Name: Indira M. Kailas MD   Ph.#: (504) 887-6088
Address: 4051 Veterans Blvd #301 Metairie LA 70002
FAX #: 504 456-7800

- Employee's Diagnosis*: Adjustment Dis with depr. Mood
(* You may use Diagnostic Code Number if you wish.)
1. Maximum weight employee can lift regularly (pounds): N/A
2. Standing limitations (in hours/shift): N/A
3. Other restrictions (be as specific as possible): Change in place of Supervisor qc   (OOFK-
4. Estimated duration of Light Duty status: N/A
5. Expected date of delivery: N/A

I CERTIFY THAT I HAVE EVALUATED THIS PATIENT. I FURTHER CERTIFY THAT THIS EMPLOYEE IS IN NEED OF LIGHT DUTY FOR THE SPECIFIED PERIOD OF TIME. I UNDERSTAND THAT ALL INFORMATION IS SUBJECT TO VERIFICATION AND FURTHER REVIEW BY THE U.S. POSTAL SERVICE MEDICAL OFFICER.

Signature: Indira Kailas    Date: 9/25/97
(ORIGINAL PHYSICIAN SIGNATURE ONLY...STAMP NOT ACCEPTABLE)

## SECTION II

Name: Reshone Stewart   SSN: 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
Position Title: Mail Processor   P/L#: 134   Tour: 1
Home Address (including City, State & Zip + 4): 7180 Whitmore Place New Orleans, LA 70128
Home Phone #: (504) 246-9354   Work Phone #: (504) 589-1145
Alternate Phone #: (504) 827-1642
Status: PTF ✓   PTR___   FTR___
Beginning Date of Postal Service: 03/29/97   Seniority Date: 03/29/97
Immediate Supervisor: Angelic Jeff   Phone #: (504) 589-1136
Date Last Worked: 7/24/97

I CERTIFY THAT I HAVE READ AND UNDERSTAND THE ABOVE AND THAT ALL THE INFORMATION SUPPLIED IS TRUE TO THE BEST OF MY KNOWLEDGE.

Employee Signature: Reshone M Stewart    Date: 25 September 97

Note: Completed application form must be returned directly to the Medical Unit. DO NOT GIVE COMPLETED FORM TO YOUR SUPERVISOR.

U.S.P.S. Medical Officer: Dr Bouligny/LnDaugh   Date: 9-25-97
Dr. Anthony J. Bouligny, MD
701 Loyola Ave.; Room 2008
New Orleans, LA 70113-9451   PH #(504) 589-1174   FAX #589-1382

18

**PHYSICIAN'S STATEMENT OF LIGHT DUTY**
Please be as specific as possible with requested restrictions.

[Stamp: NOV 1999 U.S.P.S. MEDICAL UNIT NEW ORLEANS LA 70113-9405]

Physician's Name **Dr. Indira Kailas**   Ph.# **(504) 885-6789**

Address **4051 Vet. Suite 301 Metairie LA 70002**   Fax # **(504) 456-7800**

1. Maximum weight employee can lift regularly (Pounds) **N/A**

2. Standing limitations **N/A**

3. Other restrictions (Be as specific as possible) **Miss Corell should be working in a place where she does not have to interact with the supervisors with whom she is having problems.**

4. Expected Duration of Temporary Light Duty status: **3-4 months**

5. (DX) DRG / ICD-9 CODE: **Adj dis c̄ Depressed Mood** I certify I have evaluated this patient.

I further certify this employee is in need of LIGHT DUTY for the specified period.

Signature **Indira Kaila**   Date: **8/03/99**
(Original Physician Signature Only - Stamp Not Acceptable)

**EMPLOYEES SECTION TO COMPLETE**

EMPLOYEE NAME **Reshone Stewart**   SSN **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**

CRAFT / POSITION **Clerk/Mark-up Clk**   P/L **050**   Tour **(2) 10-6:30pm**

Home Address (City, Zip + 4) **7180 Whitmore Pl NOLA 70128-4627**

Home Phone **246-9354**   Wk Phone **589-1134**   Alternate Phone _____

Status (Circle) PTF (FTR) PTR TE Other: _____   Date of Birth: **11-16-67**

Beginning Date of Postal Service **29 May 97**   Seniority Date **Same**

Immediate Supervisor **Mrs. Mae Dunbar**   Phone **589-1134**

Date Last Worked **29 July 99**   Installation Assigned **701 Loyola**

I certify I have read and understand the above information. I further certify all information supplied is, to the best of my knowledge, true.
I understand if I report with restrictions other than that requested in writing by the physician, the light duty approval is not valid and will not be honored.

Employee Signature **Reshone Stewart**   DATE **29 July 99**
Note: Complete application form must be returned directly to the Medical Unit / Postmaster.

For U.S.P.S. Medical Officer **M Bouligny /P. Misovich, LN**   Date **8/9/99**
Dr. Anthony J. Bouligny, MD
701 Loyola Avenue, Room 2008
New Orleans LA 70113-9451   Phone 504-589-1174   Pager 888.389.1174   Fax # ███

3

# PHYSICIAN'S STATEMENT OF LIGHT DUTY
Please be as specific as possible with requested restrictions.

Physician's Name __INDIRA KAILAS__ Ph. # __504 887 6088__

Address __4051 Vet. Svc. 301 Metairie__ Fax # __504 4567800__

1. Maximum weight employee can lift regularly (Pounds) __N/A__

2. Standing limitations __N/A__

3. Other restrictions (Be as specific as possible) __Miss Sorrell should be working in a place where she will not be interacting with Mr. Arthur Pierce with whom she had problem.__

4. Expected Duration of Temporary Light Duty status: __90 days__

5. DX / DRG / ICD-9 CODE: __Maj depression__ I certify I have evaluated this patient.

I further certify this employee is in need of LIGHT DUTY for the specified period.

Signature __Indira Kailas__ Date: __8/30/99__
(Original Physician Signature Only - Stamp Not Acceptable)

## EMPLOYEE SECTION TO COMPLETE

EMPLOYEE NAME __Reshonn Stewart__ SSN __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__

CRAFT / POSITION __Clerk/Mark Up UK__ P/L __050__ Tour __2__

Home Address (City, Zip + 4) __7180 Whitmore Pl NOLA 70128-4627__

Home Phone __246-9354__ Wk Phone __589-1134__ Alternate Phone _____

Status (Circle) PTF (FTR) PTR TE Other: _____ Date of Birth: __11/16/67__

Beginning Date of Postal Service __31 May 97__ Seniority Date __29 May 97__

Immediate Supervisor __Mrs. Mac Dunbar__ Phone __589-1134__

Date Last Worked __3 Aug 99__ Installation Assigned __701 Loyola__

I certify I have read and understand the above information. I further certify all information supplied is, to the best of my knowledge, true.
I understand if I report with restrictions other than that requested in writing by the physician, the light duty approval is not valid and will not be honored.

Employee Signature __Reshonn Stewart__ DATE __30 August 99__
Note: Complete application form must be returned directly to the Medical Unit / Postmaster.

For U.S.P.S. Medical Officer __A. Bouligny / P. Mirvich__ Date __8/30/99__
Dr. Anthony J. Bouligny, MD
701 Loyola Avenue, Room 2008
New Orleans LA 70113-9451    Phone 504-589-1174 Pager 888.389.1174 Fax #▓▓▓

2