FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 MAY -4 PM 2: 12

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RESHONE M. STEWART | * | CIVIL ACTION |
| | * | NUMBER: 00-0114 "N" (2) |
| v. | * | JUDGE CLEMENT |
| | * | |
| WILLIAM J. HENDERSON, POSTMASTER GENERAL | * | MAGISTRATE WILKINSON |
| | * * * | |

## PRE-TRIAL ORDER

1.  The date of the pre-trial conference is May 3, 2001 at 2:00.

2.  J Courtney Wilson appeared for plaintiff, Reshone Stewart.

    Sandra Gutierrez appeared for defendant, William J. Henderson, Postmaster General,

    United States Postal Service.

3.  Plaintiff is an employee of the United States Postal Service.

    Defendant is the Postmaster General of the United States Postal Service.

4.    **Jurisdiction:**

Plaintiff asserts a Title VII claim for sexual harassment while employed by the United States Postal Service.

5.    **Pending or contemplated motions:**

**Plaintiff:** n/a

**Defendant**: Motions in Limine, respective to Plaintiff's failure to furnish discovery requests

*concerning lost wages and 404(b) testimony.*

6.    **Material facts claimed by:**

**Plaintiff:**

Plaintiff began working at the USPS in March 1997. From June through September her supervisor was Arthur Pierce. About her third week on the job on at least three occasions Pierce came unnecessarily close to her machine while she was cleaning and brushed her buttocks. This was the first inappropriate thing or remark he initiated.

The first remark was that he was into "tall women." He continued to make this remark during late April/May through August/September 1997 at least twice a week. This was his most frequent remark. Plaintiff objected to these remarks and complained to Cornell Rowel, then an automation clerk.

Pierce stopped his remarks for a week or so, but began to stare at her every day he was

-2-

there for the next year or so until she was transferred to Mark-up on November 21, 1998. The stares were nasty in a sexual way.

In the middle of May Pierce started with "freak" remarks and licking his tongue. During late May/early June 1997 he would say this daily. This period lasted about one month. He continued to lick his tongue at her when he passed by until she went into mark-up. Seymore Price, union steward, said that he would talk to the MDO's about it. The "freak" remarks stopped, but not the tongue licking.

From June to late September Pierce became her administrative supervisor. About May/June 1997 she wore an orange sleeveless shirt. Pierce remarked that he "might be into shoulders." This occurred in the OCR area when she was bringing her rejects to this area which he supervised. This was the only time he made this remark. Later that night he bit her on the shoulder.

He made a "sweet to eat" remark once "freak" period.

Throughout the time Pierce was making both the "tall women" and "freak" periods at least a half dozen times he would say something like. "You know, I sure like beautiful women."

About early August 1997 he asked her to breakfast at the end of the shift. She declined.

He continued to make the above comments and lick his tongue.

-3-

In late August/early September 1997 Pierce told plaintiff's work group that all PFT's would have to work on Labor Day. When plaintiff came in for the Monday-Tuesday night shift, she found that Yolanda Rogers had been excused for that time.

On September 14, 1997 she asked Pierce for EAL for her sick daughter. He told her that if she brought in documentation it would be approved. She took leave, but on September 18 (am) she learned that Pierce had not approved it which exposed her to a charge of being absent without permission; this incident provoked her first written complaint. She was turned over to Ms Jones, Time and Attendance supervisor, who turned the matter over to MDO Parks.

On about September 22, 1997 she sought her first medical help; she saw Dr Kailas who counseled her and prescribed Exofor. She also saw EAP.

She was off work under Dr Kailas' orders from September 29 to October 15, 1997. Dr Kailas requested a workplace change. She was switched to a new work station (#135) only a few feet away from where she had been stationed, but just as much under Pierce's authority and just as accessible to him as before.

Except for several months (February to late July/early August, 1998 during her pregnancy when she worked on the patch up table) she stayed at #135 from October 1997 until her transfer to mark-up was approved on November 21, 1998. She returned to work from her pregnancy in early October, 1998.

-4-

At work station # 135 and then the patch up table from October 1997 to November 21, 1998 Pierce continued to harass her.

At #135 before she was pregnant Pierce would walk by and wink his eye and lick his lips. On one occasion he shot a rubber band at her.

At the patch up table he would just walk by constantly.

On October 21, 1998 Pierce, acting as MDO, had come on her unit at #135 the last two days. He stared, winked, and licked his tongue at her. Once he actually came on her machine. He gave her an intimidating smirk and laugh.

A month later she was transferred to the mark-up unit. Thereafter, Robert Brooks, union steward, told her that "management" referred to her as 'trouble." He first told her this about 2-3 weeks after she was transferred. The last time he told her this was late 1999/early 2000.

When she would come in to work in the morning on this unit she would see Pierce. He only stared at her. At first these stares were nasty in a sexual way. For the last three months the stares have been of the type that say, "I'm gonna get you."

Recently he has begun to show up when plaintiff visits Harrah's. This has occurred 5 times, the last time being September 17, 2000. He stares and smirks.

Meanwhile, Robert Brooks, union steward, told her in @ June/July 1999 that Trevor LNU in personnel had shown him several e-mails trying to force her out of the mark-up unit

back to processing and distribution in closer proximity to Pierce. On August 5, 1999 she was directed to leave mark-up and report to the automation floor where, although she would not work the same shift as Pierce and Watson, she would have 1 ½ hr overlap with them. This directive was made by personnel (Judy Miller and James Oliver) despite a settlement leaving her in mark-up until the conclusion of her lawsuit.

In November 1998 her grievance awarded plaintiff transfer to full time mark-up, but the transfer reduced plaintiff to PTF at cost of holidays. In January 1999 plaintiff grieved the holiday loss and won.

On August 5, 1999 plaintiff was re-assigned from mark-up to the floor closer to Pierce. On August 11, 1999 plaintiff filed a new EEO complaint and in September she grieved her re-assignment. Anthony Ruda orally stopped the transfer till end of litigation.

On March 15, 2000 plaintiff got preliminary notice that the step increase of 12/00 will be deferred and on December 2000 her step increase was denied.

As early as September 1997 plaintiff's doctor was stating that the Post Office should Change the place of her supervisor's work. The doctor stated the same thing in August 1999- she should be not working in a place where she does not have to interact with the supervisor with whom she is having problems.

She is depressed every time she goes to work. She had nightmares 3-4 times since the last incident at Harrah's. The last one had Pierce laying next to her in bed. Before Harrah's

-6-

she had nightmares once a week although some months she would have none. She would jump up out of bed with the feeling that Pierce had sent someone to hurt her.

Sometimes at work she sits at the computer and merely looks at it. It is hard for her to stay focused. Her supervisor gave her an "unsatisfactory" a month of two ago.

At home she no longer has any desire for sexual relations with her husband; he finds her boring. She snacks for no reason and her weight has been increasing.

**Defendant:**

Plaintiff, Reshone Stewart, was hired by the United States Postal Service as a Part-time Flexible (PTF) mail processor effective March 29, 1997. Plaintiff, like all new employees at USPS, entered into a 90-day probationary period upon her hire. Ninety days after March 29, 1997, Plaintiff became a career employee with the USPS. Also like all new employees, Plaintiff was given sexual harassment training during her orientation.

Plaintiff claims that shortly after she began to work at the USPS, Arthur Pierce, a supervisor, began sexually harassing her. Plaintiff claims that Mr. Pierce remarked that he was "into tall women" and "shoulders", stated that he wanted something "sweet to eat", brushed her buttocks, and stared at her frequently. Plaintiff claims that Mr. Pierce bit her on the shoulder once in May or June of 1997.

Plaintiff claims to have complained to her union steward in May/June of 1997, who in turn referred her to the EEO. Plaintiff claims not to have pursued the EEO process at this

-7-

time because she was a probationary employee and was afraid of the consequences.

Although Arthur Pierce was not Plaintiff's direct supervisor, he did have occasion to act as her administrative supervisor in the absence of her own supervisor between March of 1997 and the middle of September of 1997. Plaintiff claims that on September 14, 1997, Mr. Pierce did not authorize Emergency Annual Leave in connection with her sick daughter. Further, Mr. Pierce allegedly refused to give Plaintiff time off for Labor Day.

On September 18, 1997, Plaintiff informed Brenda Jones, Supervisor of Distribution Operations (SDO) for Time and Attendance at USPS, of Mr. Pierce's alleged sexual harassing behavior. On this date, Ms. Jones was conducting a pre-disciplinary meeting with Plaintiff respective to Plaintiff's unscheduled absences. Ms. Jones asked Plaintiff to write a statement outlining her complaints and informed James Park, Manager of Distribution Operations on Tour 1, of Plaintiff's allegations. Mr. Park is the highest ranking supervisor on Tour 1.

On this same day, Mr. Park met with Plaintiff and a union steward to discuss her specific allegations. After this meeting with Plaintiff on September 18, 1997, Mr. Park conducted an administrative investigation which included speaking to several employees named by Plaintiff as possible witnesses. These employees worked with Plaintiff in pay location 134. After speaking to the employees, Mr. Park spoke with Arthur Pierce and asked for a statement from him addressing Plaintiff's allegations. Mr. Park forwarded the

-8-

statements to the EEO office.

Plaintiff claims that since she has filed her September 1997 EEOC charge she has been subjected to retaliation. Plaintiff claims retaliatory discrimination because she was denied a transfer to the mark-up unit by personnel; she was made a PTF (part-time flexible) in 1998 in mark-up after she was made full-time by personnel; personnel ( Judy Miller and James Oliver) transferred her to automation in August of 1999; she was pulled off the clock on August 18, 1999, by MDO Aubrey Watson; and she was denied her next step increase by personnel in December 2000.

7.    **Uncontested material facts:**

Plaintiff began work for the US Postal Service in March 1997 and is still employed there. From June through September 1997 Arthur Pierce was her supervisor.

8.    **Contested issues of fact:**

A.    Whether plaintiff was sexually harassed by Arthur Pierce.

B.    What position - supervisor or non-supervisor - Pierce held at the various times he engaged in the harassment.

C.    Whether during Pierce's supervisory period defendant exercised reasonable care to prevent sexual harassment.

-9-

D.   Whether during Pierce's supervisory period defendant exercised reasonable care to correct promptly any harassment.

E.   Whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities.

F.   Whether during Pierce's non-supervisory periods defendant knew or should have known of his harassment of plaintiff.

G.   Whether defendant took prompt and effective remedial action during Pierce's non-supervisory periods.

H.   What, if any, injury Plaintiff suffered and to what extent?


9.   **Contested issue of law**

A.   Whether or not Plaintiff failed to timely exhaust her administrative remedies respective to claims that she was sexual harassed prior to August 4, 1997.

B.   Whether or not Plaintiff is entitled to equitable tolling of the time period within which she should have filed an EEO administrative complaint.

C.   Whether or not Plaintiff can establish she was subjected to a supervisor sexual harassment.

D.   Whether or not Plaintiff can establish she was subjected to sexual harassment.

E.   Whether or not Defendant is protected from liability by the affirmative defense

-10-

recognized by <u>Burlington</u>.

F.    Whether or not Plaintiff suffered retaliatory discrimination.

10.    **Exhibits:**

**Plaintiff:**

A.    Any exhibit listed by defendant, ~~reserving all objections~~

B.    Witness statement, October 1998.

C.    All grievances and EEOC charges filed by plaintiff.

D.    Memo, Pierce/unnamed doctor, 5/10/97

E.    Attendance record for Plaintiff, Postal Fiscal Year 1997

F.    Memo, Plaintiff/Dupuy for Aubrey Watson, 8/13/99

G.    Temporary Light Duty card, dated 8/13/99

H.    Temporary Light Duty card, dated 9/3/99

I.    Letter, Pierce/EEO, 10/23/99

J.    Verification of Employee contact with EAP, 9/1/00.

**Defendant:**

1.    Plaintiff's personnel file.

2.    Plaintiff's time and attendance records.

3.    Plaintiff's EEO administrative files.

-11-

4.     Plaintiff's disciplinary files.

5.     Plaintiff's individual training records.

6.     USPS's sexual harassment policy.

7.     Plaintiff's medical records.

8.     Plaintiff's EAP records.

9.     Organizational chart of the New Orleans main post office.

10.    Plaintiff's injury compensation file.

11.   **Deposition testimony:**

**Plaintiff:**   Possibly that of Dr Kailas.
**Defendant**:  n/a

12.   **Charts:**

**Plaintiff:**   Possibly one of plaintiff and Pierce's various work areas.
**Defendant**:  Charts of Plaintiff's EEO complaints, union complaints, medical complaints.

13.   **Witnesses:**

**Plaintiff:**
   **Will call**
      Plaintiff - Per deposition
      Her husband - Emotional distress of plaintiff
      Kailas, Indira, M.D.- Emotional distress of plaintiff
   **May call**
      Any witness listed by defendant
      Blackwell, Brenda - complaints by plaintiff; harassment by Pierce
      Brooks, Robert - reports via e-mail of plaintiff as troublemaker and efforts to
         ee-assign her

-12-

Burrell, Todd - Pierce's biting plaintiff; use of the term "freak", and other harassment of plaintiff

Coleman, Elemuel - complaint of harassment by plaintiff; response of defendant and Pierce; "priors" by Pierce

Domino, Travella - threat by Pierce

Johnson, Melanie - management view of plaintiff as "trouble"

Kirkland, Keith - Pierce's reaction to accusations of sexual harassment

Lucien, Kathleen - harassment by Pierce

Price, Seymore - complaint of harassment by plaintiff; response of defendant and Pierce; "priors" by Pierce

Rowel, Cornell - complaint of harassment by plaintiff; response of defendant and Pierce; harassment by Pierce of plaintiff; "priors" by Pierce

Ruda, Anthony - response to transfer of plaintiff and defendant's reaction

Smith, Rosalyn - harassment of plaintiff by Pierce

Smith, Willie - Pierce's biting plaintiff; "sweet to eat" remark by Pierce to plaintiff; "priors" by Pierce.

~~Stewart, Stephon - harassment by Pierce; "priors" by Pierce; response of defendant to complaints about Pierce~~

Watson, Aubrey - transfer of plaintiff; defendant's response to complaints of harassment *(is will have here; no need to subpoena &)*

Williams, Jesse - travel to hospital with plaintiff and Pierce

Williams, Ray - complaint of harassment by plaintiff; response of defendant and Pierce; remarks to plaintiff by Pierce; "priors" by Pierce

Impeachment witnesses-

Malcolm Cheatem - impeachment of Rosalind Sevalia Smith & Arthur Pierce

Beverly Patton - impeachment of Arthur Pierce

*Keante Joseph - impeachment of Arthur Pierce*

**Defendant:**
   **Will call:**

1.    **Aubrey Watson**
      Manager, Distribution Operations
      United States Postal Service
      701 Loyola Avenue
      New Orleans, La 70113
      589-1036

      Will testify as to general facts concerning USPS' distribution operations, and the functions of the operations on Tour I.


2.    **James Park**
      Manager, Distribution Operations
      United States Postal Service
      701 Loyola Avenue
      New Orleans, La 70113
      589-1036

      Will testify as to the events of September, 1997, surrounding Plaintiff's complaints of sexual harassment, and the administrative investigation he conducted.

3.    **Ellen St. Cyr**
      Manager, Equal Employment Opportunity (EEO) Dispute Resolution
      United States Postal Service
      701 Loyola Avenue
      New Orleans, La 70113
      589-1036

      Will testify as to the EEO policies and regulations of the USPS. Will also explain the EEO administrative process and talk about Plaintiff's EEO complaints.

-14-

4.    **Arthur Pierce**
      Supervisor, Distribution Operations
      United States Postal Service
      701 Loyola Avenue
      New Orleans, La 70113
      589-1036

      Will testify regarding the allegations made against him by Plaintiff.

5.    **Brenda Jones**
      Attendance & Control, Tour I
      United States Postal Service
      701 Loyola Avenue
      New Orleans, La 70113
      589-1145

      Will testify as to the facts surrounding Plaintiff's pre-disciplinary interview
      and how and when Plaintiff first complained about Arthur Pierce.

6.    **Mack Boyd**
      Labor Relations
      United States Postal Service
      701 Loyola Avenue
      New Orleans, La 70113
      589-1036

      Will explain USPS' union grievance procedures.

7.    **Reshone Stewart, plaintiff**

8.    **Mae Dunbar**
      CFS Manager, Tour II
      United States Postal Service
      701 Loyola Avenue
      New Orleans, La 70113
      589-1036

-15-

Plaintiff's current supervisor. Will testify about Plaintiff as an employee of the USPS .

9. **Rosalyn Smith**
   Supervisor, Distribution Operations
   United States Postal Service
   701 Loyola Avenue
   New Orleans, La 70113
   589-1123

   Will testify about Plaintiff as an employee of the USPS. Ms. Smith was Plaintiff's supervisor between September, 1997, through the summer of 1999.

10. **Rosalyn Sevalia Smith**
    United States Postal Service
    701 Loyola Avenue
    New Orleans, La 70113
    589-1036

    Will testify as to her knowledge of Plaintiff as an employee. Ms. Smith was Plaintiff's acting supervisor in 1997 when Plaintiff worked in pay location 134.

11. **Rita Scott**
    EEO Counselor
    United States Postal Service
    701 Loyola Avenue
    New Orleans, La 70113
    589-1312

    Will testify about EEO orientation and training at USPS.

11a. *Harold Ginsburg, M.D.; Ph.D.; JD. re plaintiff's psychiatric evaluation*

**May call:**

12. Heidi Dupleises
    EEO Counselor/Investigator

-16-

United States Postal Service
701 Loyola Avenue
New Orleans, La 70113
589-1283

Will testify regarding the administrative inquiry into Plaintiff's allegations against Arthur Pierce.

13.    Ray Williams
       (Retired USPS employee)

       Plaintiff's former supervisor. Will testify as to his knowledge of Plaintiff's complaints regarding Arthur Pierce.

14.    Cornell Rowell
       United States Postal Service
       701 Loyola Avenue
       New Orleans, La 70113
       589-1283

       Former co-worker of Plaintiff's. Will testify as to his knowledge regarding Plaintiff and Arthur Pierce's relationship.

15.    Angelic Jett
       United States Postal Service
       701 Loyola Avenue
       New Orleans, La 70113
       589-1036

       Witness was Plaintiff's former supervisor for about 1 ½ years at the USPS. Will testify as to Plaintiff's behavior and her knowledge of Plaintiff's complaints regarding Arthur Pierce.

-17-

16. This is a **jury** case.

> Proposed jury instruction, special jury instructions, trial memoranda and any special questions that the court wis asked to put to prospective jurors on voir dire shall be delivered to the court and opposing counsel not later than five working days prior to the trial date, unless specific leave to the contrary is granted by the court.

17. The issue of liability will not be tried separately from that of quantum.

18. **<u>Other expediting matters:</u>**
Whether the defendant will produce its witness employees at no cost to plaintiff. Whether a settlement conference would be beneficial.

19. Trial shall commence on **May 21, 2001** before a **jury**.

20. This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

21. Possibility of settlement of this case has been considered.

New Orleans, La., this 2nd day of May, 2001.

UNITED STATES MAGISTRATE JUDGE

J Courtney Wilson, attorney for Plaintiff

Sandra E. Gutierrez, attorney for Defendant

-18-